UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KEITH L. CALVIN,

        Plaintiff,

v.

                                     Case No. 3:19-cv-916-J-34MCR

JULIE L. JONES AND
CORIZON HEALTH PROVIDER,

        Defendants.

## ORDER

### I. Status

Plaintiff Keith L. Calvin, an inmate of the Florida penal system, initiated this action on August 8, 2019, by filing a pro se Civil Rights Complaint (Complaint; Doc. 1) and exhibits (P. Ex., Docs. 1-1 and 1-2).[1] In the Complaint, Calvin asserts claims pursuant to 42 U.S.C. § 1983 against Defendants Julie L. Jones and Corizon Health Provider (Corizon).[2] He alleges that Defendant Jones failed to protect him from a mentally-impaired inmate who burned Calvin's right ankle and foot with hot water on August 8, 2015. See Complaint at 5-6. Additionally, he states that Corizon denied him proper medical care for the burn. See id. at 6. As relief, Calvin requests compensatory damages.

---

[1] The Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

[2] Calvin also named Woodrow Myers as a Defendant, but the Court dismissed Calvin's claims against Woodrow Myers on June 5, 2020. See Order (Doc. 32).

This matter is before the Court on Defendant Corizon's Motion to Dismiss (Motion; Doc. 21) and Defendant Jones' Motion to Dismiss (Jones Motion; Doc. 24) with exhibits (Doc. 24-1 at 1-8). The Court advised Calvin that granting a motion to dismiss would be an adjudication of the case that could foreclose subsequent litigation on the matter and gave him an opportunity to respond. See Order (Doc. 8). Calvin filed responses in opposition to the Motions. See Sworn Notarized Affidavit (Response; Doc. 27) with exhibits (Docs. 27-1 through 27-4); Response to Defendant's Motion to Dismiss (Response II; Doc. 30). Thus, Defendants' Motions are ripe for review.

## II. Plaintiff's Allegations[3]

As to the underlying facts, Calvin asserts that Defendant Jones breached the state court's "Corrected Uniform Commitment to Custody," P. Ex. A, Doc. 1-1, when she "neglected" her responsibility to house him in a safe prison environment. Complaint at 5. According to Calvin, the incident in which he was injured could have been prevented "[w]ith better care[,] custody[,] and control," and therefore, he holds her responsible for "allowing" him to "g[e]t burned[.]" Id. at 6. He alleges that Corizon and its employees failed to properly treat his "3rd degree boiling hot water burn." Id. He states that Corizon employees informed him that he needed a skin graft by a specialist. See id. According to Calvin, Corizon instead refused "future treatment" on December 8, 2015, "leaving [his]

---

[3] The Complaint is the operative pleading. In considering a motion to dismiss, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Miljkovic v. Shafritz and Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015) (quotations and citations omitted). As such, the recited facts are drawn from the Complaint and may differ from those that ultimately can be proved.

2

skin pink and brown" with "a lifetime of nerve damage" and an "ugly burn scar." Id. at 6-7.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted

3

deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x 837, 839 (11th Cir. 2011)[4] (quoting GJR Invs., Inc. v. Cty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), overruled in part on other grounds as recognized in Randall, 610 F.3d at 706).

### IV. Summary of the Arguments

Defendant Jones requests dismissal of Calvin's claim against her because Calvin failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act (PLRA), before filing the instant 42 U.S.C. § 1983 lawsuit. See Jones Motion at 4-9.

---

[4] "Although an unpublished opinion is not binding . . . , it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

Both Defendants argue that Calvin fails to state plausible Eighth Amendment claims against them. See Motion at 8-16; Jones Motion at 9-13. In his Responses, Calvin maintains that he exhausted his claim against Defendant Jones, see Response at 1-2, and states plausible Eighth Amendment claims against Jones and Corizon, see id. at 3-4; Response II at 3-5.

## V. Exhaustion of Administrative Remedies

### A. PLRA Exhaustion

The PLRA requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before asserting any claim under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a). Nevertheless, a prisoner such as Calvin is not required to plead exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized "failure to exhaust is an affirmative defense under the PLRA[.]" Id. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). Not only is there an exhaustion requirement, "the PLRA exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds

5

> out, and doing so properly (so that the agency addresses the issues on the merits)." Pozo,[5] 286 F.3d, at 1024. . . .

Woodford, 548 U.S. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." Id. As such, the United States Supreme Court has emphasized:

> Courts may not engraft an unwritten "special circumstances" exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are "available."

Ross v. Blake, 136 S.Ct. 1850, 1862 (2016).

The determination of whether an inmate exhausted his available administrative remedies prior to pursuing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss or be treated as such if raised in a summary judgment motion. Bryant, 530 F.3d at 1374-75 (citation omitted). The Eleventh Circuit has explained the two-step process that the Court must employ when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. See Turner, 541 F.3d at 1081.[6] In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner

---

[5] Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002).

[6] Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008).

6

> show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082-83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015); see Pavao v. Sims, 679 F. App'x 819, 823-24 (11th Cir. 2017) (per curiam).

### B. Florida's Prison Grievance Procedure

State law "determines what steps are required to exhaust." Dimanche v. Brown, 783 F.3d 1204, 1207 (11th Cir. 2015); see also Jones, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The Florida Department of Corrections (FDOC) provides an internal grievance procedure for its inmates. See FLA. ADMIN. CODE r. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance to a designated staff member at the institutional level. See FLA. ADMIN. CODE r. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. See FLA. ADMIN. CODE r. 33-103.006. If the matter is not resolved at the institutional level, the inmate must file an appeal to the Office of the FDOC Secretary. See FLA. ADMIN. CODE r. 33-103.007. However, under certain specified circumstances, an inmate can bypass the informal-grievance stage and start with a formal grievance at the institutional level. See FLA. ADMIN. CODE r. 33-103.005(1); 33-103.006(3). Or, an inmate can completely bypass the institutional level and proceed

7

directly to the Office of the FDOC Secretary by filing a "direct grievance." See FLA. ADMIN. CODE r. 33-103.007(3). Emergency grievances and grievances of reprisal are types of "direct grievances" that may be filed with the Office of the Secretary. See FLA. ADMIN. CODE r. 33-103.007(3)(a).

Florida Administrative Code Rule 33-103.011 provides time frames for submission of grievances. Generally, the following time limits apply. Informal grievances must be received within twenty days from the date on which the incident or action that is the subject of the grievance occurred. See FLA. ADMIN. CODE r. 33-103.011(1)(a). Formal grievances must be received no later than fifteen days from the date of the response to the informal grievance. See FLA. ADMIN. CODE r. 33-103.011(1)(b). Similarly, grievance appeals to the Office of the Secretary must be received within fifteen days from the date the response to the formal grievance is returned to the inmate. See FLA. ADMIN. CODE r. 33-103.011(1)(c). According to Rule 33-103.014, an informal grievance, formal grievance, direct grievance, or grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more . . . conditions are found to exist." FLA. ADMIN. CODE r. 33-103.014(1). The rule provides an enumerated list as "the only reasons for returning a grievance without a response on the merits." See FLA. ADMIN. CODE r. 33-103.014(1)(a)-(y). Some of the reasons for returning a grievance are: untimeliness; the grievance "addresses more than one issue or complaint" or "is so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to" or "is not written legibly and cannot be clearly understood" or is a supplement to a previously-submitted grievance that has been accepted for review; and

8

the inmate "did not provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable," or he did not provide the required attachments. See FLA. ADMIN. CODE r. 33-103.014(1).

### C. Calvin's Exhaustion Efforts

Defendant Jones maintains that Calvin failed to properly exhaust his administrative remedies as to the failure-to-protect claim against her before filing the instant § 1983 lawsuit. See Jones Motion at 4-9. In support of her position, she submitted the relevant grievances and responses. See Doc. 24-1 at 1-8. In his Response, Calvin asserts that he "made a strong attempt" to exhaust, Response at 1, and attached exhibits, see Docs. 27-1, 27-3.

The documents attached to Calvin's Response and Jones' Motion reflect that Calvin submitted an informal grievance to Ms. Andrews, the Warden at Union Correctional Institution (UCI), on August 22, 2015, stating in pertinent part:

> Dear Warden Andrews: On the 17th date of August 2015, I submitted an informal grievance unto you concerning my burn I received on Aug[.] 8th, 2015. I[']m requesting that you or your investigator review the A-Dorm Cam[e]ra[]s between the hours of 6-7 pm, mainly at the [entrance] of A-Dorm, directly [e]ntering into the officer[']s station. I want to know how did I g[e]t s[cald]ed by this other inmate. My back was turned away from the other inmate. I must know how the incident occurred on August 8th, 2015 because I[']m suffering to[o] much pain, suffering and emotional tra[u]ma from that hot wat[]er being poured o[]n me. The inmate had been warned a lots [sic] of times before about carrying around that boiling hot wate[r] in his hands. Your prompt attention in this matter is kindly appreciated.

9

Docs. 24-1 at 1; 27-1 at 1.[7] Lieutenant J. Boyett approved the grievance on September 3, 2015, stating: "This incident was thoroughly investigated. The other inmate did not appear to have done this intentionally." Id. On May 1, 2019, Calvin submitted a formal grievance to UCI Warden Anderson, stating in pertinent part:

> Warden Anderson, [o]n the 20th day of March 2019, I[']ve submitted an inmate request unto the present inmate medical provider "Centurion" seeking important information from within my medical files p[er]taining to my injury in August, 2015. See my copy attached hereto.[8] As of this date, Centurion medical staff has refused to respond or provide me with the following important information: #(1). On which specific date in August 2015 was I first brought in for emergency medical treatment for my 3rd degree boiling hot water burns on my right leg, ankle and foot? #(2). On which specific date did RN O'Connell or Connelly pre[s]cribe to Dr. Perez within my medical files that I should immediately receive an emergency skin graph [sic] upon my burn areas? #(3). On which specific date did Corizon medical provider refuse[] and discontinue[] me further future medical treatment for my burns? #(4). Do[] my medical files reflect as to why Corizon medical providers ha[ve] refus[]ed to provide me with medical treatment for my nerve damage occurred due to the boiling hot water burn upon my right leg down to my foot? Please provide me copies of this information from within my files.

Id. at 2, Request for Administrative Remedy or Appeal, Log No. 1905-213-038. On May 29, 2019, Chief Health Officer E. Toledo, M.D. and Assistant Warden T. Knox responded, stating in pertinent part:

> Your request for Administrative Remedy or Appeal has been received, reviewed and evaluated.

---

[7] According to Calvin, he submitted two informal grievances at the institutional level "in order to receive a[] respon[s]e," and Lieutenant Boyett responded to the second grievance. Response at 1.

[8] See Doc. 24-1 at 3, Inmate Request to Centurion, dated March 20, 2019.

10

> There is no record of this request being received by medical staff. An appointment has been scheduled for you to review your medical records, regarding your requested information. Watch the Call-Out.
>
> You are being treated in accordance with FDC policy and procedure.
>
> Based on the above information, your grievance is denied.

Id. at 4. Next, Calvin submitted a Request for Administrative Remedy or Appeal to the Office of the FDOC Secretary on June 10, 2019. See id. at 5. In the grievance, he appealed the denial of his formal grievance relating to his request for medical information and also complained about the denial of medical care for his August 2015 burn. See id. On July 1, 2019, Michelle Schouest, IISC, returned the grievance without action, stating in pertinent part:

> Your administrative appeal has been received in non-compliance with Chapter 33-103.
>
> Your appeal presents issues that were not previously addressed at the institutional level. This is an appellate review process; it is not appropriate to raise new issues, allegations, charges, and facts that the previous decision maker (institution) ha[s] not had an opportunity to investigate and provide a response.
>
> Also, please be advised that you are outside the timeframe to grieve an issue that happened in 2015.
>
> Therefore, your appeal is being returned without action.

Id. at 6.

As to the initial step in the two-part process for deciding motions to dismiss for failure to exhaust under the PLRA, the Eleventh Circuit has instructed:

11

> Deciding a motion to dismiss for failure to exhaust proceeds in two steps: first, looking to the defendant's motion and the plaintiff's response, the court assesses whether dismissal is proper even under the plaintiff's version of the facts; and second, if dismissal is inappropriate under the plaintiff's version of the facts, the court makes "specific findings in order to resolve the disputed factual issues related to exhaustion." Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008). The burden is on the defendant to show a failure to exhaust. Id.

Arias v. Perez, 758 F. App'x 878, 880 (11th Cir. 2019) (per curiam). Accepting Calvin's view of the facts as true, a dismissal of the claim against Defendant for lack of exhaustion is not warranted at the first step. Thus, the Court proceeds to the second step in the two-part process where the Court considers Defendant's arguments regarding exhaustion and makes findings of fact.

A prisoner must exhaust administrative remedies as to each claim that he seeks to present in court. See Jones, 549 U.S. at 219. Thus, to fully exhaust, Calvin was required to complete the three-step process with respect to his failure-to-protect claim against Defendant Jones before filing the instant § 1983 lawsuit. None of his grievances addressed his assertion that Jones failed to protect him from the mentally-impaired inmate who burned him with hot water on August 8, 2015. As such, Defendant Jones' Motion is due to be granted with respect to the exhaustion issue as to Calvin's claim against her.

### VI. Eighth Amendment Deliberate Indifference

Pursuant to the Eighth Amendment to the United States Constitution, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Eighth Amendment "imposes duties

on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). "To establish an Eighth Amendment violation, a prisoner must satisfy both an objective and subjective inquiry regarding a prison official's conduct." Oliver v. Fuhrman, 739 F. App'x 968, 969 (11th Cir. 2018) (citing Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004)). The Eleventh Circuit has explained:

> Under the objective component, a prisoner must allege a condition that is sufficiently serious to violate the Eighth Amendment. Id.[9] The challenged condition must be extreme and must pose an unreasonable risk of serious damage to the prisoner's future health or safety. Id. The Eighth Amendment guarantees that prisoners are provided with a minimal civilized level of life's basic necessities. Id.
>
> Under the subjective component, a prisoner must allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference. Id. This means the prisoner must show that the prison officials: (1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) displayed conduct that is more than mere negligence. Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003).

Id. at 969-70. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319 (1986).

---

[9] Chandler, 379 F.3d at 1289.

13

As it relates to medical care, "[t]he Supreme Court has interpreted the Eighth Amendment to prohibit 'deliberate indifference to serious medical needs of prisoners.'" Melton v. Abston, 841 F.3d 1207, 1220 (11th Cir. 2016) (quoting Estelle v. Gamble, 429 U.S. 97, 102 (1976)). The Eleventh Circuit has instructed:

> To prevail on a deliberate indifference claim, [a plaintiff] must show: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009). To establish deliberate indifference, [a plaintiff] must prove "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Townsend v. Jefferson Cnty., 601 F.3d 1152, 1158 (11th Cir. 2010) (alteration in original). The defendants must have been "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and then actually draw that inference. Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003) (quotation omitted).

Easley v. Dep't of Corr., 590 F. App'x 860, 868 (11th Cir. 2014). "For medical treatment to rise to the level of a constitutional violation, the care must be 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Nimmons v. Aviles, 409 F. App'x 295, 297 (11th Cir. 2011) (quoting Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir.1991)); see also Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989) (stating "[g]rossly incompetent or inadequate care can constitute deliberate indifference …, as can a doctor's decision to take an easier and less efficacious course of treatment" or fail to respond to a known medical problem). However, the law is well-settled that the Constitution is not implicated by the negligent acts of corrections officials and medical personnel. Daniels v. Williams, 474 U.S. 327, 330-31

14

(1986); Davidson v. Cannon, 474 U.S. 344, 348 (1986) ("As we held in Daniels, the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials."). A complaint that a physician has been negligent "in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011) (quotation marks and citation omitted). Moreover, the Eleventh Circuit has stated that "[n]othing in our case law would derive a constitutional deprivation from a prison physician's failure to subordinate his own professional judgment to that of another doctor; to the contrary, it is well established that 'a simple difference in medical opinion' does not constitute deliberate indifference." Bismark v. Fisher, 213 F. App'x 892, 897 (11th Cir. 2007) (quoting Waldrop, 871 F.2d at 1033). Similarly, "the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) (citation omitted).

Although Corizon is not a governmental entity, "[w]here a function which is traditionally the exclusive prerogative of the state … is performed by a private entity, state action is present" for purposes of § 1983. Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 703 (11th Cir. 1985) (citations omitted). Indeed,

> "when a private entity . . . contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state" and "becomes the functional equivalent of the municipality" under section 1983. Buckner v. Toro, 116 F.3d 450, 452 (11th Cir. 1997). "[L]iability under § 1983 may not be based on the doctrine of

15

> respondeat superior." Grech v. Clayton Cnty., Ga., 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc).

Craig v. Floyd Cty., Ga., 643 F.3d 1306, 1310 (11th Cir. 2011); see Brennan v. Headley, 807 F. App'x 927, 937 (11th Cir. 2020) ("Corizon, as a private entity that contracts with the state to provide medical services to inmates, is treated as a municipality for purposes of § 1983 claims.").

Where a deliberate indifference medical claim is brought against an entity, such as Corizon, based upon its functional equivalence to a government entity, the assertion of a constitutional violation is merely the first hurdle in a plaintiff's case. This is so because liability for constitutional deprivations under § 1983 cannot be based on the theory of respondeat superior. Craig, 643 F.3d at 1310 (quoting Grech v. Clayton Cty., Ga., 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc)); see Denno v. Sch. Bd. of Volusia Cty., 218 F.3d 1267, 1276 (11th Cir. 2000). Instead, a government entity may be liable in a § 1983 action "only where the [government entity] itself causes the constitutional violation at issue." Cook ex. rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla., 402 F.3d 1092, 1116 (11th Cir. 2005) (citations omitted). Thus, a plaintiff must establish that an official policy or custom of the government entity was the "moving force" behind the alleged constitutional deprivation. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 693-94 (1978).

In Monell, the Supreme Court held that local governments can be held liable for constitutional torts caused by official policies. However, such liability is limited to "acts which the [government entity] has officially sanctioned or ordered." Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986). Under the directives of Monell, a plaintiff also must

16

allege that the constitutional deprivation was the result of "an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law." Denno, 218 F.3d at 1276 (citations omitted); see Hoefling v. City of Miami, 811 F.3d 1271, 1279 (11th Cir. 2016) (stating Monell "is meant to limit § 1983 liability to 'acts which the municipality has officially sanctioned or ordered'"; adding that "[t]here are, however, several different ways of establishing municipal liability under § 1983").

"A policy is a decision that is officially adopted by the [government entity] or created by an official of such rank that he or she could be said to be acting on behalf of the [government entity]." Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997) (citation omitted). The policy requirement is designed to "'distinguish acts of the [government entity] from acts of employees of the [government entity], and thereby make clear that [governmental] liability is limited to action for which the [government entity] is actually responsible.'" Grech, 335 F.3d at 1329 n.5 (quotation and citation omitted). Indeed, governmental liability arises under § 1983 only where "'a deliberate choice to follow a course of action is made from among various alternatives'" by governmental policymakers. City of Canton v. Harris, 489 U.S. 378, 389 (1989) (quoting Pembaur, 475 U.S. at 483-84). A government entity rarely will have an officially-adopted policy that permits a particular constitutional violation, therefore, in order to state a cause of action for damages under § 1983, most plaintiffs must demonstrate that the government entity has a custom or practice of permitting the violation. See Grech, 335 F.3d at 1330; McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004). A custom is an act "that has

17

not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown, 520 U.S. 397, 404 (1997) (citation omitted). The Eleventh Circuit has defined "custom" as "a practice that is so settled and permanent that it takes on the force of law" or a "persistent and wide-spread practice." Sewell, 117 F.3d at 489. Last, "[t]o hold the [government entity] liable, there must be 'a direct causal link between [its] policy or custom and the alleged constitutional deprivation.'" Snow ex rel. Snow v. City of Citronelle, 420 F.3d 1262, 1271 (11th Cir. 2005) (quotation omitted). Because Corizon's liability under § 1983 would be based on its functional equivalence to the government entity responsible for providing medical care and services to FDOC inmates, Calvin must plead that an official policy or a custom or practice of Corizon was the moving force behind the alleged federal constitutional violation.

Upon review, Calvin has neither identified an official Corizon policy of deliberate indifference nor an unofficial Corizon custom or practice that was "the moving force" behind any alleged constitutional violation. In his Response, Calvin maintains that an "in-depth review" of local federal court computer websites will show widespread complaints by FDOC inmates against Corizon. Response II at 4. He maintains that he "was never seen by an outside burn nor nerve specialist as he was promised by Dr. Perez." Id. at 3; see Complaint at 6. Additionally, he states that Nurse Cordilla denied him "future medical treatment in December 2015," Response II at 5, knowing that Corizon's contract with the State would end in early 2016, see Complaint at 6. According to Calvin, Corizon should have "investigated or fired Dr. Perez and Cordilla…." Id.

18

Corizon cannot be held liable based on any alleged conduct of or decisions by its employees simply because they were working under contract for Corizon to provide medical care to inmates. Calvin's factual allegations relating solely to alleged individual failures in his medical care are simply insufficient to sustain a claim that there is either a policy to deny medical care to inmates or a practice or custom of denying adequate medical care, much less that the practice was so widespread that Corizon had notice of violations and made a "conscious choice" to disregard them. Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998). In consideration of the above analysis, the Court finds that Calvin has failed to establish a claim that Corizon violated his Eighth Amendment right. As such, Corizon's Motion is due to be granted.

In consideration of the foregoing, it is now

**ORDERED**:

1. Defendant Corizon's Motion to Dismiss (Doc. 21) is **GRANTED**, and Calvin's claim against Corizon is **DISMISSED.**

2. Defendant Jones' Motion to Dismiss (Doc. 24) is **GRANTED** with respect to the exhaustion issue, and Calvin's claim against her is **DISMISSED WITHOUT PREJUDICE**.[10]

---

[10] The applicable four-year statute of limitations has likely run as to Calvin's claim against Jones. See McNair v. Allen, 515 F.3d 1168, 1173 (11th Cir. 2008). Nevertheless, the Court dismisses Calvin's claim against her without prejudice in the event that Calvin could show otherwise.

      3.      The Clerk shall enter judgment accordingly, terminate any pending motions, and close the case.

**DONE AND ORDERED** at Jacksonville, Florida, this 31st day of July, 2020.

*Marcia Morales Howard*
MARCIA MORALES HOWARD
United States District Judge

sc 7/31
c:
Keith L. Calvin, FDOC #626305
Counsel of Record